GIBBENS

*v.*

RITTER.

(*Supreme Court of Appeals of Virginia, Sept. 19, 1878.*)

**Bond for Purchase Price of Land—Assignment—Priority of Payment.** *

Bonds, for the payment of purchase price of land secured by a deed of trust, which are assigned at different times, must be satisfied out of the proceeds of the land in the order of their assignment.

**Same—Payable to Commissioner—Right to Assign.**

A commissioner to sell lands, under a decree of a court of chancery, to whom the bonds of the purchaser are payable, may assign the same to third persons and thus control and extend the liens upon the property, where the parties interested have been fully satisfied and make no objection to the assignment. The commissioner, being the obligee in the bond, is clothed with the legal title and control.

**Same—Assignment—Caveat Emptor.**

The doctrine of *caveat emptor* applies as well to the purchaser of a bond as to any other property; when he takes the assignment of the bond and the deed as security for its payment, he is affected with notice of every bond mentioned in the deed.

Appeal from circuit court of Frederick county.

The facts are fully stated in the opinion.

This is a controversy between two assignors of two dif-

---

*See foot-notes to McClintic *v.* Wise, 25 Gratt. 448 (Va. Rep. Anno.), and Gordon *v.* Fitzhugh, 27 Gratt. 835 (Va. Rep. Anno.).

ferent bonds. The lower court decreed in favor of the first assignee in point of time. Decree affirmed.

*R. Parker*, for appellant.

*Holmes Conrad*, for appellee.

Staples, J., delivered the opinion of the court.

Under a decree of the circuit court of Frederick county in the case of McKown's heirs v. McKown's heirs, a sale of certain lands was made by Z. Silver, a commissioner appointed for that purpose. Three bonds were executed by the purchaser for $1,110.15 each, payable the 14th of January, 1868, the 14th of January, 1869, and the 14th of January, 1870. A deed of conveyance was executed to the purchaser and a deed of trust given to the commissioner by the latter upon the land to secure the payment of the purchase money. The third and last bond was by the decree of the court and with the consent of the parties set apart for the benefit of the widow of Warner McKown in lieu of dower in the land sold. There is no controversy touching this bond and we need not concern ourselves about it. It is with the first and second bonds we have to deal. That falling due on the 14th of January, 1868, was assigned by the commissioner the day after its maturity, together with the deed of trust, to F. S. S. McKown, who paid the commissioner full value for the same, and the money was properly distributed among those entitled to it under the decree of the court. There is no doubt but that McKown advanced the money for the benefit of the purchaser and the accommodation of the beneficiaries of the fund. On the 19th of January, 1872, McKown, for value received, assigned the bond to Clevenger, the present holder.

The second bond, falling due the 14th of January, 1869,

was on that day assigned by the commissioner to the appellant Gibbens and the money properly accounted for by the commissioner to the parties. The controversy here is between these assignees of the first and second bonds. It is a question of priority of payment out of the proceeds of the land embraced in the deed of trust. The case would seem to be governed by that of McClintic v. Wise, 25 Gratt. 448, and Gordon v. Fitzhugh, 27 Gratt. 835. According to these cases the appellee would be clearly entitled to the priority he claims under the first assignment as he is the holder of the bond first falling due. It is insisted, however, that the present case invokes other principles not arising or decided in the cases just cited. And first it is claimed that a mere commissioner to sell lands under a decree of a court of chancery is not authorized without the sanction of the court to make an assignment of the purchaser's bonds to third persons and thus control and extend the liens upon the property. His duty is expressly to collect the purchase money and pay it out as directed by the court. As between the commissioner and the parties interested this may be so. He can of course make no transfer or assignment prejudicial to their interests. The assignee having notice of all the proceedings, would, of course, take subject to their claims. In this case, however, the parties interested have been fully paid all that is due them. They are making no complaint and they have at no time made any objection to the act of the commissioner in making the assignments. If they do not object it is not perceived how any other person can. If they are satisfied there is no good reason why the commissioner may not assign the bond to a third person with all the liens given for its payment. Such an arrangement is often advantageous to all concerned—to the purchaser who thus obtains an extension of time, and to the beneficiaries in the prompt payment of their money. The commissioner,

being the obligee in the bond, is clothed with the legal title and control of the bond.

In Clarksons v. Doddridge, 14 Gratt. p. 42, notwithstanding the commissioners had been removed from office and others appointed in their places, an action at law upon the bond was instituted in their names. This court held that the legal intent was vested in the commissioners to whom the bond was executed; that the substitution of the new commissioners did not transfer or effect that intent, and the action was properly brought in the names of the obligees.

And in Moss v. Moorman, 24 Gratt. 97, an assignment of a bond by a commissioner to a third person was upheld by this court as valid and effectual to transfer the bond as a subsisting security against the obligor himself. If valid against him it must be equally so against three persons unless there is some equity supervening to prevent it.

The appellant himself claimed under an assignment made by the same commissioner in 1869, and he was content with that assignment until January, 1875, when it occurred to him for the first time to abandon the assignment, to claim for money paid, and to take a deed of trust upon the same land. If he repudiates the assignment, he must, of course, stand in the shoes of the debtor, and as such he is directly within the influence of the case of Moss v. Moorman.

It is said, however, that the appellant, at the time he took the assignment of the second bond had the right to suppose that the first had been satisfied. Every assignee of a secured or posterior bond might with equal propriety contend for the same presumption. No such inference can fairly be drawn. It often occurs that the holder of several bonds falling due at different dates transfers them to different persons, and such assignments have been recognized by this court as valid according to their priorities without regard to any question of notice. The doctrine of *caveat emptor* ap-

plies as well to the purchaser of a bond as to any other property. When he takes the assignment of the bond and the deed given as security for its payment, he is of course affected with notice of every bond mentioned in the deed. He has no right to rest upon any mere presumption that such bonds have been paid; he must enquire and inform himself. This failure to do so cannot affect the rights of others having equal equity if not superior equity to himself.

With respect to the question that the heirs of McKown are not parties, it is for the first time made in this court. Under such circumstances the objection is not viewed with favor by the court, and will not be entertained unless essential to a just decree upon the merits.

The two bonds already alluded to are the only subjects of controversy in this case. In these the heirs of McKown have no sort of interest as they have already received the amount of the same.

It is very true that the circuit court by its decree of 31st March, 1876, directed the third bond, after the death of the widow, to be delivered to the appellant, but that portion of the decree was set aside at the June term, 1876, and the disposition of that bond reserved for future adjudication. Before that question is settled the heirs of McKown can be made parties, if it be necessary, for the protection of their rights.

Upon the whole the decree of the 31st of March, 1876, subject to the modification contained in the subsequent decree of June term, 1876, is affirmed.